UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

JONATHAN SIMEON GHOLSTON

Case No. 3:26-cr-25-JEP-SJH
18 U.S.C. § 371

## INFORMATION

The United States Attorney charges:

### COUNT ONE

A. Introduction

At all times material to this Information:

1. Medicare was a federally funded health care benefit program that provided medical coverage for persons age 65 and over and for persons under age 65 who were disabled.

2. Medicaid was a health care program funded by both the federal government and the State of Florida that provided medical coverage for certain low-income individuals.

3. Medicare and Medicaid were each a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f).

4. Medicare and Medicaid were each a "health care benefit program" as defined in 18 U.S.C. § 24(b).

5. Medicare was divided into four parts: A, B, C, and D. Part D provided supplementary medical insurance benefits that covered the cost of many prescription drugs, but Medicare paid for such a drug only if it was prescribed for a medically accepted indication that facilitated the diagnosis or treatment of illness or injury or the improvement of the functioning of a malformed body member.

6. First Coast Community Development, Inc. ("FCCD"), was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida. FCCD was licensed as a pharmacy by the State of Florida.

7. Smooth Vision Marketing, Inc. ("SVM"), was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida.

8. The defendant, JONATHAN SIMEON GHOLSTON, was the owner and operator of SVM.

B. Charge

Beginning in or about November 2023 and continuing through in or about July 2025, in the Middle District of Florida, and elsewhere, the defendant,

JONATHAN SIMEON GHOLSTON,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully solicit and receive remuneration, by kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring a person for the furnishing and

arranging for the furnishing of an item and service for which payment may be made in whole and in part under a health care benefit program, that is, Medicare and Medicaid, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A).

### C. Manner and Means

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1. In or about November 2023, the defendant and SVM entered into an agreement with FCCD to market HIV post-exposure prophylactic medications that would be supplied by FCCD.

2. The agreement provided that FCCD would pay SVM $200 for every person who was referred to FCCD for the provision of HIV medications but that FCCD would pay this amount only if a claim submitted on behalf of the person was paid by Medicare or Medicaid.

3. SVM marketing representatives set up tents and tables in Jacksonville, generally in low-income areas, and offered to provide free, government-sponsored cell phones to anyone who stopped and agreed to provide their information.

4. As a result of SVM's agreement with FCCD, while obtaining the personal information necessary for the person to receive the free cell phone, the marketers also obtained health insurance information, including whether the person was covered by Medicare or Medicaid.

5. Pursuant to SVM's agreement with FCCD, the marketers were supposed to ask the person to answer questions from a medical questionnaire but the marketers often filled in the answers to those questions themselves, without posing the questions to the person.

6. SVM paid its marketers a set amount, usually $50, for every person who was referred to FCCD for HIV medications, but it paid this amount only if the claim for that person was paid by Medicare or Medicaid.

7. The information gathered by SVM's marketers was sent to FCCD, which used the information to generate prescriptions for HIV medications that were authorized by a nurse practitioner who had never seen, spoken with, or performed any manner of evaluation, examination, or test on the persons for whom the prescriptions were issued.

8. FCCD filled the prescriptions, submitted claims to Medicare or Medicaid for the medications, and was reimbursed approximately $4,000 per month for each person for whom a claim was paid.

9. The persons who were signed up by SVM's marketers believed that they were agreeing only to receive a free cell phone and did not request or agree to receive HIV medications.

10. For the period of November 2023 through July 2025, the actions of the defendant and his co-conspirators caused the submission of approximately 20,316 fraudulent claims, resulting in reimbursements from Medicare totaling

approximately $11,681,479 and reimbursements from Medicaid totaling approximately $12,536,267. Accordingly, the total loss to these programs was approximately $24,217,746.

11. The defendant received a total of approximately $2,273,000 in proceeds as a result of his involvement in the offense.

### D. Overt Acts

In furtherance of the conspiracy and to effectuate the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere:

1. In or about November 2023, the defendant and SVM entered into an agreement with FCCD to market HIV prophylactic medications that would be provided by FCCD.

2. In or about February 2024, an SVM marketer referred Person 1 to FCCD for the provision of HIV medications.

3. During the period of February 2024 through December 2024, FCCD submitted eleven claims to Medicare for medications prescribed to Person 1, resulting in payments to FCCD totaling approximately $21,013.

4. In or about March 2025, an SVM marketer referred Person 2 to FCCD for the provision of HIV medications.

5. On or about March 10, 2025, FCCD submitted three claims to Medicare for medications prescribed to Person 2, resulting in payments to FCCD

totaling approximately $4,312.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of a conspiracy to violate 42 U.S.C. § 1320a-7b(b)(1), in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture for at least approximately $2,273,000, which represents the proceeds the defendant obtained as a result of the offense.

4. If any of the property described above, as a result of any act or omission of a defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

        GREGORY W. KEHOE
        United States Attorney

By: _____
        ARNOLD B. CORSMEIER
        Assistant United States Attorney

By: _____
         s/ KARA WICK
        Assistant United States Attorney
        Chief, Health Care Fraud Section